UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINA LEWIS, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EASSIT, INC. D/B/A EASSIST DENTAL SOLUTIONS, a Wyoming corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS<br><br>Case No. 2:22-CV-00121-HCN-DAO<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Christina Lewis, a former remote dental billing specialist for Defendant eAssist Dental Solutions, brings this action on behalf of herself and a putative class of similarly situated individuals, alleging violations of the Fair Labor Standards Act. eAssist moves to dismiss. The court grants the motion.

I.

eAssist seeks dismissal on the ground that Ms. Lewis failed to engage in mediation before bringing this action as required by the eAssist Independent Contractor Service Agreement, to which Ms. Lewis agreed before beginning her work with eAssist. As relevant here, this agreement provides as follows:

> Any and all disputes arising from, or relating to, this Agreement shall first be attempted to be resolved through good faith, non-binding mediation pursuant to the following terms: within ten (10) days after notice of demand for mediation has been made by a party, the parties, or their counsel, shall in good faith discuss the issues involved, discuss a suitable mediator and mediation procedure, and agree on mediation rules particularly tailored to the matter in dispute, with a view to the dispute's prompt, efficient, and just resolution, and the parties hereto shall conduct not less than four (4) hours of non-binding mediation on each such dispute, with such mediation to occur in the State of Utah. Unless otherwise agreed, the mediator's fees shall be born equally by the parties. Each of the parties hereto hereby expressly agrees that the mediation of any said dispute is an express

> precondition for proceeding with further legal action of each dispute. After such mediation of any dispute, or in the case of a failure by any party to so mediate, any action on any dispute arising from, or relating to, this Agreement, shall be brought, and shall be located, only in the State of Utah, and the applicable state and federal courts located therein shall have exclusive jurisdiction over any such action between the parties and its enforcement.

Dkt. No. 23-1 at 4 § 17.

Although Ms. Lewis concedes that this provision requires mediation, she contends that "it does not state that this must be done *prior to initiating litigation*." Dkt. No. 23 at 12. In support, she emphasizes that the agreement requires mediation as "an express precondition for proceeding with *further* legal action," which, she maintains, implies that some previous legal action will have already occurred.

The court disagrees. The parties' agreement explicitly states that "[a]ny and all disputes arising from, or relating to, this Agreement shall *first* be attempted to be resolved through good faith, non-binding mediation." Dkt. No. 23-1 at 4 § 17 (emphasis added). And it further provides that

> *[a]fter* such mediation of any dispute, or in the case of a failure by any party to so mediate [i.e., to mediate in "good faith"], any action on any dispute arising from, or relating to, this Agreement, shall be brought, and shall be located, only in the State of Utah, and the applicable state and federal courts located therein shall have exclusive jurisdiction over any such action between the parties and its enforcement.

*Id.* (emphasis added). The explicit temporal and sequential language of these provisions cannot be reconciled with Ms. Lewis's argument that a party may first file suit and then engage in mediation. And when the language on which Ms. Lewis relies is read in context, it undercuts rather than supports her argument, for it is clear that as used by the agreement "further legal action" means any legal action other than the mediation which is "an express precondition" for such further action.

## II.

In the alternative, Ms. Lewis argues that the mediation requirement cannot be enforced because it is unconscionable. *See* Dkt. No. 23 at 3–6. The court rejects this argument.

A plaintiff "claiming unconscionability bears a heavy burden." *Miller v. Corinthian Colleges, Inc.*, 769 F. Supp. 2d 1336, 1344 (D. Utah 2011). To be substantively unreasonable under Utah law,[1] a contractual term must be more than "unreasonable or more advantageous to one party." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998). Rather, the terms of a contract must be "so one-sided as to oppress or unfairly surprise an innocent party" or there must exist "an overall imbalance in the obligations and rights imposed by the bargain." *Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996) (cleaned up).

Ms. Lewis maintains that the mediation requirement is substantively unconscionable for three reasons. First, she argues that because the agreement does not impose a time limit for completing mediation, it allows a defendant to stall indefinitely, perhaps even until a plaintiff's claims are barred by a statute of limitations.

The court disagrees. The agreement requires the parties to attempt to resolve disputes through "*good faith*, non-binding mediation." Dkt. No. 23-1 at 4 § 17 (emphasis added). And it expressly mandates that "the parties, or their counsel, shall *in good faith* discuss the issues involved, discuss a suitable mediator and mediation procedure, and agree on mediation rules particularly tailored to the matter in dispute" no later than "*ten (10) business days after notice of demand for mediation has been made by a party*." *Id.* (emphasis added). And they must do so

---

[1] The agreement provides that it "will be governed and construed in accordance with the laws of the State of Utah, without giving effect to any choice of law provisions thereof." Dkt. No. 23-1 at 4 § 17. Neither party suggests that this court should disregard this provision and look to a different source of law.

"with a view to the dispute's *prompt*, efficient, and just resolution." *Id.* (emphasis added). If any party fails "to so mediate," the opposing party may bring suit. *Id.* The contract clearly does not permit either party to "drag[] its feet" as Ms. Lewis purports to fear. Dkt. No. 23 at 4. And, if eAssist did engage in bad-faith, dilatory conduct, Ms. Lewis would not be at the company's mercy—she could simply bring her action without further ado. In addition, even though the agreement does not contain an express deadline for completing mediation, under Utah law, when "a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances." *New York Ave, LLC v. Harrison*, 391 P.3d 268, 277 (Utah Ct. App. 2016) (quoting *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 858 (Utah 1998)).

Second, Ms. Lewis argues that the mediation unfairly burdens plaintiffs by requiring that "the mediator's fees shall be borne equally by the parties." Dkt. No. 23-1 at 4 § 17. But although courts applying Utah law have held that dispute resolution clauses requiring plaintiffs to pay *all* of the defendants' mediation or arbitration costs are unconscionable, *see Sosa*, 924 P.2d at 362, they have not held that cost-splitting provisions like the one at issue here are improper, *see Miller*, 769 F. Supp. 2d at 1345. In all events, the agreement requires cost-splitting only "[u]nless otherwise agreed." Dkt. No. 23-1 at 4 § 17. Here, eAssist has represented, both in its reply brief and at oral argument, that it will pay all of the costs of mediation in this case. *See* Dkt. No. 26 at 6; Nov. 29, 2022 hearing recording at 35:25–40, *Lewis v. eAssist*, No. 2:22-cv-00121-HCN-DAO. Especially in light of this representation, the court has little difficulty rejecting Ms. Lewis's contention that the mediation requirement would require her to bear an unconscionable financial burden.

Third, Ms. Lewis argues that the requirement that mediation take place before litigation effectively bars collective actions and that eAssist has thus sought to "backdoor a class action

4

waiver into the agreement." *See* Dkt. No. 23 at 6. But collective or class action waivers are not substantively unconscionable under Utah law. *See Miller*, 769 F. Supp. 2d at 1348–49. And the mediation requirement does not amount to a collective action waiver in all events.

Ms. Lewis does not contend that the agreement contains an explicit waiver of her right to bring a collective action. Nor does the fact that the agreement requires her to engage in mediation before litigation bar her from bringing a collective action.

To be sure, Ms. Lewis argues that even if permitted in theory, a collective action would be impossible in practice if each potential class member must engage in individual mediation before he or she can opt into the collective action. *See* Dkt. No. 23 at 6 n.1. But at oral argument, the court suggested that a collective action in this case could proceed as follows: First, Ms. Lewis engages in mediation with eAssist. Second, if this mediation fails to resolve the dispute, Ms. Lewis files her action and seeks conditional certification. Third, if the court determines conditional certification is appropriate, potential class members are notified and offered the opportunity to engage in collective mediation with eAssist. Fourth, if the collective mediation fails, the potential class members who engaged in collective mediation are permitted to opt into the collective action. Both parties conceded that proceeding in this manner would be permissible under the agreement and workable in practice. *See* Nov. 29, 2022 hearing recording at 56:06–14, 59:31–41. The court accordingly cannot say that the mediation requirement amounts to a collective action waiver, either by its terms or in effect—let alone that it is unconscionable on this ground.

Ms. Lewis also argues that the mediation requirement is procedurally unconscionable because it is a backdoor collective action waiver, and because it is boilerplate and she was given no meaningful opportunity to negotiate its terms. But under Utah law, to establish that a

contractual term is unenforceable as unconscionable, a party almost always must show that the term is substantively and not merely procedurally unconscionable. *See Sosa*, 924 P.2d at 361. And while Utah courts have acknowledged that "it is conceivable that a contract might be unconscionable on the theory of procedural unconscionability without any substantive [unconscionability]," they have also emphasized that this "would be rare." *Id.* (cleaned up); *see also Cantamar, L.L.C. v. Champagne*, 142 P.3d 140, 152 (Utah Ct. App. 2006) (explaining that "procedural unconscionability alone rarely renders a contract unconscionable") (cleaned up). The court has already rejected Ms. Lewis's argument that the mediation requirement is a backdoor collective action waiver. And the court has little difficulty concluding that Ms. Lewis's remaining arguments do not come close to establishing that this is the "conceivable" "rare" case in which procedural unconscionability alone renders a contractual term unenforceable

### III.

Ms. Lewis also contends that she should be excused from compliance with the mediation requirement under the doctrines of impossibility and frustration of purpose. *See* Dkt. No. 23 at 7–11. Her argument is premised on her contentions that the mediation requirement is impossible, impractical, or at least pointless when, as here, a party seeks to prosecute a collective action. The court concludes that these doctrines do not excuse Ms. Lewis from her contractual obligations.

Under Utah law, the doctrine of impossibility applies when "an unforeseen event occurs after formation of the contract and without fault of the obligated party, which event makes performance of the obligation impossible or highly impracticable." *Western Props. v. Southern Utah Aviation*, 776 P.2d 656, 658 (Utah Ct. App. 1989) (footnotes omitted). This doctrine is not limited to circumstances where performance is literally impossible; performance is also excused when it "can only be done at an excessive and unreasonable cost." *Commercial Union Assocs. v.*

*Clayton*, 863 P.2d 29, 39 (Utah Ct. App. 1993) (quoting *Transatlantic Fin. Corp. v. United States*, 363 F.2d 312, 315 (D.C. Cir. 1966)). The Utah courts have applied this doctrine sparingly, however, holding it does not excuse performance because of employee walkouts, *see Tech Ctr. 2000, LLC v. Zrii, LLC*, 363 P.3d 566, 575 (Utah Ct. App. 2015), failure to obtain a permit, *see Central Utah Water Conservancy Dist. V. Upper East Union Irr. Co.*, 321 P.3d 1113, 1121 (Utah 2013), or dramatic price increases, *see Kilgore Pavement Maint., LLC v. West Jordan City*, 257 P.3d 460, 461, 464 (Utah Ct. App. 2011).

The doctrine of frustration of purpose "differs from the defense of impossibility only in that performance of the promise, rather than being impossible or impracticable, is instead pointless." *Tech Ctr. 2000*, 363 P.3d at 575 (cleaned up). The Utah Supreme Court has stated that the application of this doctrine "depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was made." *Castagno v. Church*, 552 P.2d 1282, 1283 (Utah 1976).

As already discussed, the mediation requirement does not foreclose Ms. Lewis from pursuing a collective action. And while the requirement that she and potential class members first engage in mediation may increase the difficulty and cost of maintaining a collective action to some extent—though, in light of the parties' acknowledgment of the possibility of collective mediation by potential opt-in members, not nearly as much as Ms. Lewis initially contended—the court concludes that any additional difficulty and cost required to prosecute a collective action does not amount to either "excessive and unreasonable cost," *Commercial Union Assocs.*, 863 P.3d at 39, or "the total or nearly total destruction of the purpose" of the mediation requirement, *Castagno*, 522 P.2d at 1283. Nor do the additional difficulty and cost render Ms.

7

Lewis's compliance with the mediation requirement to which she agreed "impossible," "impracticable," or "pointless." *Tech Ctr. 2000*, 366 P.3d at 575.

## IV.

Finally, Ms. Lewis requests that if the court determines that she must engage in mediation before pursuing litigation, it stay this action pending mediation rather than grant Defendant's motion to dismiss. *See* Dkt. No. 23 at 13–15. The parties, however, "contracted for a certain dispute resolution procedure." *U.S. Magnesium, LLC v. ATI Titanium. LLC*, 2017 WL 913596, *4 (D. Utah Mar. 7, 2017). Specifically, the parties agreed to mediation *before* either party commences litigation—not to "mediation in the shadow of a pending lawsuit." *LifeVantage Corp. v. Hollenback,* 2021 WL 2779280, *2 (D. Utah July 2, 2021). "By failing to engage in mediation prior to filing suit," Ms. Lewis has thus "denied Defendant the benefit of their bargain." *U.S. Magnesium*, 2017 WL 913596 at *4. The court "cannot countenance such a clear disregard for a party's contractual obligations." *Id.* The court will accordingly enforce the parties' agreement and dismiss this action without prejudice rather than granting Ms. Lewis's request for a stay.[2]

\* \* \*

For the foregoing reasons, the motion to dismiss is GRANTED. This action will be DISMISSED WITHOUT PREJUDICE.[3]

---

[2] In *U.S. Magnesium*, the court held that "the harm of dismissal to the plaintiff, the harm of not dismissing to the defendant, and the interests of judicial efficiency" should be considered when determining whether a motion to dismiss or a stay should be granted in this context. 2017 WL 913596 at *4. For essentially the same reasons set forth in that opinion, the court concludes that these factors way in favor of dismissal rather than a stay in this case.

[3] In light of this disposition, Ms. Lewis's motion for conditional class certification is denied without prejudice.

IT IS SO ORDERED.

DATED this 15th day of March, 2023

_____
Howard C. Nielson, Jr.
United States District Judge